**UNITED STATES of America,
Plaintiff,**

v.

**ARTICLES OF FOOD CONSISTING of 668 cases, more or less, each case containing one 20-piece set OF POTTERY, and 466 cases, more or less, each case containing one 45-piece set of pottery, and 187 display sets, more or less, LABELED in part: "Contemporary Ironstone * * * FDA Approved CATHY ROSE No. Line 20 by Clemens China Co.", Defendant.**

Civ. A. No. 4–70201.

United States District Court,
E. D. Michigan, S. D.
Jan. 17, 1974.

Robert Sharp, U. S. Atty., Detroit, Mich., for plaintiff.

Frank W. Donovan, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

The United States has filed a Complaint for Forfeiture against: (a) 668 cases, each containing one 20-piece set, of Cathy Rose pattern pottery, (b) 466 cases, each containing one 45-piece set, of Cathy Rose pattern pottery, and (c) 187 display sets of Cathy Rose pattern pottery. These goods were seized by the government during the last week of August, 1973 and are presently stored in a warehouse belonging to claimant located at 261 Church Street, Mount Clemens, Michigan. Claimant is Mount Clemens China Company, a Michigan corporation having its principal place of business in Mount Clemens; it has intervened in this proceeding as owner of the goods described. It moves for summary judgment and dismissal.

The Complaint for Forfeiture alleges that the articles proceeded against are adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C)[1] in that they contain a food additive, lead, which is unsafe within the meaning of 21 U.S.C. § 348(a).[2] The government contends

1. "A food shall be deemed to be adulterated . . . if it is, or it bears or contains, any food additive which is unsafe within the meaning of section 348 of this title . . . ." 21 U.S.C. § 342(a)(2)(C).

2. "A food additive shall, with respect to any particular use or intended use of such additives, be deemed to be unsafe for the purposes of the application of clause (2)(C) of section 342(a) of this title, unless—

(1) it and its use or intended use conform to the terms of an exemption which is in effect pursuant to subsection (i) of this section; or

that these goods and their intended use are not exempt under any applicable law or regulation.

Other contentions raised by the government are not necessary to decision.

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(f), states:

> "The term 'food' means (1) articles used for food or drink for man or other animals . . . and (3) articles used for components of any such article."

Of interest also is the definition of "food additive" appearing in 21 U.S.C. § 321(s):

> "The term 'food additive' means any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food (including any substance intended for use in . . . holding food . . . .)."

It appears that food additives are subject to regulation as foods. *See* 21 U.S. C. § 342(a)(2)(C).

In its Complaint for Forfeiture the government alleges that more than 1,000 sets of pottery dinnerware, each containing plates, bowls, cups, and saucers and intended to be used in the service of foods for human consumption, contain a lead substance. The complaint alleges that some or all of this lead, which is unsafe for human consumption, may migrate from the pottery dinnerware to the food which is being served and thus cause harm.

Intervening defendant, Mount Clemens China Company, in its motions to dismiss, for judgment on the pleadings, and for summary judgment, claims in substance that the pottery is not "food" nor can the lead be considered a "food additive" as those terms are defined in the Act.

Intervening defendant's motions must be denied. There is ample case authority for the proposition that legislation such as the Federal Food, Drug, and Cosmetic Act is to be construed so that its overriding purpose, the protection of public health, is attained. The government has cited a significant statement in the case of United States v. Dotterweich, 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943):

> "The purposes of this legislation thus touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection. Regard for these purposes should infuse construction of the legislation . . . ."

The legislative history leading to the Food Additives Amendment of the Act shows a clear Congressional intent that substances which are subject to being ingested by human beings because of migration are "food additives" and thus "foods" within the meaning of the Act. *See* H.R.Rep.No.2284, 85th Cong., 2d Sess. 3 (1958); S.Rep.No.2422, 85th Cong., 2d Sess. 4–5 (1958). It is likewise clear that ordinary packaging or food holding devices from which there is no migration are not subject to the Act.

The government must be given an opportunity to prove its contentions regarding this pottery. For the reasons herein mentioned, defendant's motions are denied.

An appropriate order may be submitted.

.(2) there is in effect, and it and its use or intended use are in conformity with, a regulation issued under this section prescribing

the conditions under which such additive may be safely used." 21 U.S.C. § 348(a).